UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JUSTIN ALBRIGHT, on behalf of his daughter
T.A., a minor,

                              Plaintiff,                      **PLAINTIFF'S OPPOSITION TO MOLINOS ASOCIADOS SAC'S MOTION TO DISMISS**

      vs.

DAILY HARVEST, INC., SECOND BITE            Civil Action No.: 22-cv-05987
FOODS, INC., d/b/a "STONE GATE FOODS",
SMIRK'S LTD., MOLINOS ASOCIADOS SAC,
AND JOHN DOE CORPORATIONS 1-5,

                              Defendants.

---

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Justin Albright, on behalf of his minor daughter T.A., by and through his counsel of record, respectfully requests the Court to deny Defendant Molinos Asociados SAC's (hereinafter "Molinos") Motion to Dismiss for lack of personal jurisdiction pursuant to FRCP 12(b)(2). Defendant's application is without merit, as Molinos has both creatively represented the breadth of its contacts with the State of New York and conveniently omitted discussion of relevant case law that would confirm this Court's jurisdiction over Molinos. For these reasons and those discussed below, we ask this Court to deny Molinos's Motion to Dismiss.

### FACTUAL BACKGROUND

According to the FDA, on June 23, 2022, Defendant Daily Harvest, a direct-to-consumer food delivery service, voluntarily recalled approximately 28,000 units of its French Lentil + Leek Crumbles product produced between April 28 and June 17, 2022. The recall followed reports from more than 470 consumers who experienced illness or adverse reactions after consuming Daily Harvest's French Lentil + Leek Crumbles. Many consumers experienced symptoms consistent

with toxin poisoning, directly impacting the liver; these symptoms included elevated liver enzymes, jaundice, dark urine, gastrointestinal pain, and fatigue. Over 30 people had their gallbladders removed. And many continue to suffer from an array of ill effects from having eaten the Defendants' product. The ingredients used in Daily Harvest's French Lentil + Leek Crumbles were French lentils, butternut squash, hemp seed, quinoa, cremini, and a new food element called "tara".[1]

On July 19, 2022, Daily Harvest issued a communication to its customers advising them that its internal investigations identified this new food element, tara flour, as the cause of the illnesses linked to its French Lentil + Leek Crumbles product.[2]

Tara flour is an ingredient made from the seed of a legume grown in South America, which Daily Harvest used as a plant-based protein in its French Lentil + Leek Crumbles. While tara *gum*, a different product made from the same plant, has been used as a thickener in foods like ice cream, tara *flour* has not been widely used in North America or anywhere else. Nonetheless, Daily Harvest incorporated it into its food product.

The use of purified tara *gum* as a thickener, stabilizer, emulsifier, and gelling agent in foods is likely "generally recognized as safe", or "GRAS." The FDA created the designation GRAS in 1958 for those food additives with a long history of safe use in food. The GRAS designation allows food companies to bypass the traditional premarket approval process for ingredients; the companies just need to show that there is consensus among scientific experts that the substance is safe for its intended use. Tara *flour* milled from the germ of tara seeds, however, is not GRAS.

---

[1]   https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/daily-harvest-issues-voluntary-recall-french-lentil-leek-crumbles-due-potential-health-risk (hard copy available upon request)

[2]   https://www.daily-harvest.com/content/french-lentil-leek-crumbles-advisory# (hard copy available upon request)

There is no evidence that the FDA received GRAS documentation for tara *flour* before Daily Harvest's Crumbles were designed, manufactured, promoted, and sold to the public.[3]

While the creation of Daily Harvest's Crumbles involved several companies from different states across the U.S. (including New York), the source of the tara flour came from the only place it is grown, Peru. Daily Harvest (a New York corporation) developed the recipe for its French Lentil + Leek Crumbles, which included tara flour, and sold the product to U.S. consumers through its website and in store. Second Bite Foods, Inc., d/b/a "Stone Gate Foods" (hereinafter "Stone Gate Foods") (a Minnesota corporation), manufactured the subject Crumbles for Daily Harvest using tara flour supplied by Smirk's (a Colorado corporation). Smirk's sourced and imported the tara flour exclusively from Molinos (a Peruvian company).[4]

Molinos exported three separate shipments of its tara flour to Smirk's. Upon receipt, Smirk's stored the tara flour and shipped it to Stone Gate Foods piecemeal, on an "as needed" basis to produce Daily Harvest's French Lentil + Leek Crumbles. As detailed below, Molinos knew, always, that the tara flour it was providing to Smirk's would be used, exclusively, in food production for a New York company, namely Daily Harvest.

The first (and by far the largest) shipment of 454 bags of tara flour[5] was made by boat in January 2022. This shipment was initially meant to supply enough tara flour for all future productions of Daily Harvest's French Lentil + Leek Crumbles, but it was delayed due to COVID-related supply chain issues. The second and third shipments were made by air freight, via DHL, to ensure that Smirk's/Stone Gate Foods would receive tara flour in time for production. The second

---

[3] Neal D. Fortin. "The Legal Status of Tara in Food in the United States." (hard copy available upon request)
[4] All of the companies identified in this paragraph are named defendants in this action.
[5] Smirk's PO #35301, lot code GP-211003

shipment of 23 bags of tara flour[6] was made in February 2022. The third shipment,[7] containing 28 bags of tara flour (three of which were rejected by Daily Harvest), was made in April 2022.[8]

Around the same time as the Daily Harvest outbreak, the Canadian company Revive Organics, Inc., (hereinafter "Revive") which is also a subscription-based health food company that services the U.S. market, including New York, was involved in a separate foodborne illness outbreak involving tara. Numerous people who consumed Revive's Mango & Pineapple Smoothies developed symptoms identical to or substantially like the symptoms experienced (including gallbladder removal) by those individuals sickened in the Daily Harvest outbreak. The only common ingredient between Daily Harvest's French Lentil + Leek Crumbles and Revive's Mango & Pineapple Smoothie, both of which caused similar gastrointestinal complications within the same period, was tara flour. Like Daily Harvest, Revive sourced its tara flour from none other than Molinos.

The tara flour that Molinos supplied to both Daily Harvest and Revive was unfit for human consumption at the time of its importation to North America and was the original source of illness in the separate outbreaks linked to the consumption of Daily Harvest's French Lentil + Leeks Crumbles and Revive's Mango & Pineapple Smoothies. The Revive outbreak is the subject of separate litigation pending in federal court in the Eastern District of New York in which Molinos is also named a defendant. *See, Eletribi v. Revive Organics, Inc., et al.*, EDNY 1:22-cv-04362-PKC-SJB. Molinos is making a simultaneous application to avoid jurisdiction in that court as well.

On May 31, 2023, a scientific publication titled "Is Baikiain in Tara Flour a Causative Agent for the Adverse Events Associated with the Recalled Frozen French Lentil & Leek

---

[6]   Smirk's PO #36059, lot code GP-211211
[7]   Smirk's PO #36488, lot code GP-220401
[8]   These facts were gleaned from Plaintiff's review of Daily Harvest's and Smirk's document production to date, without the benefit of any discovery of Molinos.

Crumbles Food Product? – A Working Hypothesis" appeared in Chemical Research in Toxicology. In summary, the results of these studies support a working hypothesis that the adverse events reported by individuals consuming the Daily Harvest and Revive products were caused by the tara flour ingredient and were due, at least in part, to high levels of nonprotein amino acids (*e.g.,* baikiain) in the tara flour. It is further hypothesized that in vivo metabolism of metabolically unstable baikiain results in a toxic metabolite that depletes glutathione and/or is an irreversible enzyme inhibitor (for L-pipecolate oxidase), resulting in adverse events which are dependent on the dose consumed and potentially exacerbated for individuals that have specific genetic predispositions.[9]

We represent a total of 338 clients sickened in the Daily Harvest French Lentil + Leek Crumbles outbreak and 32 clients in the Revive Mango & Pineapple Smoothie outbreak (referenced above). In addition, there are approximately 161 additional claims against Daily Harvest. All of these claims share one common denominator—the victims, many of them New Yorkers, consumed Molinos's tara flour.

## ARGUMENT

Contrary to Molinos's assertion, it is subject to personal jurisdiction under two distinct subsections of New York's long-arm statute, CPLR 302, namely (a)(1) and (a)(3)(ii).

CPLR 302(a)(1) provides that a court may exercise personal jurisdiction over any non-domiciliary "who in person or through an agent… transacts any business within the state or contracts anywhere to supply goods or services in the state." As New York's Appellate Division instructively points out, "The CPLR 302(a)(1) jurisdictional inquiry is twofold: under the first

---

[9]    Chittiboyina, A.G., *et al*. 2023. Is Baikiain in Tara Flour a Causative Agent for the Adverse Events Associated with the Recalled Frozen French Lentil & Leek Crumbles Food Product? – A Working Hypothesis. 36(6):818-821. https://doi.org/10.1021/acs.chemrestox.3c00100 (hard copy available upon request)

prong the defendant must have conducted sufficient activities to have transacted business in the state, and under the second prong, the claims must arise from the transactions…. To satisfy the second prong, the statute requires an 'articulable nexus' or 'substantial relationship' between the cause of action sued upon, or an element thereof, and the defendants' business transactions in New York. (Citations omitted.) Importantly, '[t]his inquiry is relatively permissive, and does not require causation.' (Citations omitted.) Therefore, jurisdiction under CPLR 302(a)(1) 'is proper even though a defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" *Aybar v. US Tires & Wheels of Queens, LLC*, 211 A.D.3d 40, 48-49 (2d Dept 2022).

Molinos incorrectly claims that it "does not conduct business in New York, has no distributors in New York," "does not have any customers in New York," "does not actively advertise or solicit any sales to persons located in New York," and never "engaged in any substantial, continuous and systematic activities in the State of New York in general or with regard to the sale of tara protein powder in New York." But in fact, Molinos has transacted substantial business in New York State and knew it was servicing at least one significant New York customer, namely Daily Harvest.

In its first purchase order to Molinos,[10] Smirk's (a U.S.-based food products distributor with an important New York-based customer/contact, namely Daily Harvest) instructed Molinos that its tara flour "must match Daily Harvest spec" and to "work with Janet Chan from Kesco for ISF and shipping docs." The purchase order lists Kesco Logistics as having a New York address, specifically 20 East Sunrise Hwy, Suite #308, Valley Stream, NY 11581. The bill of lading[11] lists Molinos as the shipper/exporter, Smirk's as the consignee, Kesco Logistics as the party to be

---

[10] Attached as Exhibit 1.
[11] Attached as Exhibit 2.

notified, and Sobel Network Shipping Co., 100 North Centre Avenue, Suite #302, Rockville Centre, NY 11570, as the address of delivery. In an email to DHL about shipment delays, Walter Mollinedo, a Molinos's employee, copied Amna Rauhullah and Julie Weiss, two employees of Daily Harvest.[12] In an email to Mollinedo and Herbert Telge (Molinos's CEO), Dean Soicher, a Smirk's employee, wrote: "Daily Harvest did accept the kill step validation, so we don't have to sterilize product, so we may bring future orders to the NY port. Please let us know our new lead time and current transit times to the NY port."[13] In an undated presentation,[14] Molinos states, "We accepted Daily Harvest Specifications through Tracegains webpage." This webpage lists Daily Harvest as their "customer" and Daily Harvest's address as 99 Hudson 11th Floor, New York City, New York 10013.[15] [16]

Since the inception of its business relationship with Smirk's, Molinos knew that it was, in fact, servicing a New York company. This fact stands in stark contrast to Molinos' statements that its contacts with New York are "minimal and attenuated" and that it "was not apprised of the customers to which Smirk's intended to distribute the tara flour, where those customers were located or what geographic markets they served." Molinos repeatedly claims, in its memorandum of law in support of its motion to dismiss and in Herbert Telge's declaration that, "once Molinos completed its initial deliveries of tara flour, it had no way of determining the shipment's destination." In truth, Molinos, in its service of Daily Harvest, interfaced with at least three New

---

[12] Attached as Exhibit 3.
[13] Attached as Exhibit 4.
[14] Attached as Exhibit 5 (see pgs. 18 and 25).
[15] Attached as Exhibit 6.
[16] These facts were developed without the benefit of any discovery of Molinos. It is reasonable to conclude that discovery may reveal even more business contacts between Molinos and New York entities. At the same time, Plaintiff's investigation has already uncovered sufficient facts to merit a finding of jurisdiction over Molinos before this Court.

York companies: Daily Harvest directly, Kesco Logistics, and Sobel Shipping Co. In view of the above documented facts, this Court has jurisdiction over Molinos under CPLR 302(a)(1).

Additionally, Molinos is subject to this court's jurisdiction under CPLR 302(a)(3)(ii). As the New York Court of Appeals has stated, jurisdiction over a non-domiciliary under this provision "rests on five elements: First, that defendant committed a tortious act outside the State; second, that the cause of action arises from that act; third, that the act caused injury to a person or property within the State; fourth, that the defendant expected or should reasonably have expected the act to have consequences in the State; and fifth, that defendant derived substantial revenue from interstate or international commerce." *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214-215 (2000). Moreover, regarding the fourth element, the Court of Appeals stated "the defendant need not foresee the specific event that produced the alleged injury. The defendant need only reasonably foresee that any defect in its product would have direct consequences within the State." *Id.* at 214-215. All five of these requirements are met.

The critical events giving rise to this action are Molinos's export of tara flour to Smirk's (a Colorado company), Smirk's supplying the flour to Stone Gate Foods (a Minnesota company), Stone Gate Foods manufacturing the Crumbles to be sold by Daily Harvest, and Daily Harvest (a New York company) selling the Crumbles to people across the country. These transactions led to hundreds being injured, many of them New Yorkers. As demonstrated above, Molinos knew it was servicing a New York company, and could reasonably foresee that any defect in its product would have direct consequences within the State. Moreover, Molinos derives substantial revenue from international commerce, with annual revenues it admits to being more than $10 million USD.[17]

---

[17] In an email exchange dated August 25, 2022, Paola Pastor Podesta, a Molinos employee, responds to FDA officer Tara M. Mussatto's question, "Are annual sales from your company and all affiliated companies greater than $10 million USD (average annual sales for last 3 years)?" with "Yes."

Personal jurisdiction over Molinos also comports with constitutional due process requirements. Molinos' contacts with the State of New York are ample and sufficiently related to Plaintiff's claims. Also, Molinos is the source of a second foodborne illness outbreak involving New York victims, which is the subject of separate litigation in the Eastern District of New York.[18] Accordingly, the exercise of personal jurisdiction over Molinos does not offend the traditional aims of fair play and substantial justice.

The Supreme Court in *Daimler* stated clearly that a corporation is "at home" only in the states in which it is incorporated and has its principal place of business. *Daimler AG* v. *Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746 (2014). However, *Daimler* and the litany of other federal jurisprudence discussing personal jurisdiction have also stated that specific jurisdiction may cover defendants less intimately connected to a forum state. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, _ U.S. _, 141 S. Ct. 1017, 1024 (2021). Molinos has conveniently omitted discussion of any of the Supreme Court's *International Shoe* progeny, specifically *Ford*, in which the Court clarified that no precedent of the Court requires a strict causal relationship between the defendant's contacts with the forum state and the litigation. *Id.* at 1026. Rather, the litigation must "relate to" the defendant's contacts, or "purposeful availment" of the forum state as a market. *Id.*

Notwithstanding Molinos claims to the contrary, its contacts with New York State are plentiful, purposeful, and clearly related to the harm suffered by the plaintiff. Molinos knew that the largest known end user of tara flour was a New York corporation, namely Daily Harvest. Molinos specifically tailored its product to meet the requirements of that New York company and did so knowing who the direct beneficiary of its efforts would be. Further, Molinos had contact with New York importers and distributors to make its product available to Daily Harvest.

---

[18] *Eletribi v. Revive Organics, Inc., et al.*, EDNY 1:22-cv-04362-PKC-SJB.

Molinos also solicited help from others, including the U.S.-based Smirk's, to expand use of tara flour across the nation, including New York. Toward that end, Molinos communicated and dealt with known New York entities, like Daily Harvest—a national retailer that ultimately sold food products containing Molinos's toxic flour to the New York market. Molinos should have expected that its behavior would make it subject to the protection and benefit of New York laws, as well as its system of justice. Collectively, these actions render Molinos subject to personal jurisdiction in New York.[19]

Accordingly, Plaintiff requests that this Court deny Molinos's Motion to Dismiss for lack of personal jurisdiction.

DATED:    July 19th, 2023
          Rochester, New York

                                           **HEISMAN NUNES & HULL LLP**

By:    /s/ Paul V. Nunes
       Paul V. Nunes, Esq. (Bar No.: PN2853)
       69 Cascade Drive, Suite 102
       Rochester, New York 14614
       Telephone: (585) 270-6922
       pnunes@hnhattorneys.com

                                           **MARLER CLARK, INC., PS**

By:    /s/ William D. Marler
       William D. Marler, Esq., admitted *pro hac vice*
       The Standard Building
       1012 1st Avenue, Fifth Floor
       Seattle, Washington 98104
       Telephone: (206) 346-1888
       bmarler@marlerclark.com

                                           *Attorneys for Plaintiff*

---

[19] Plaintiff is mindful of Molinos's claim that the complaint may have certain deficiencies. While Plaintiff maintains that the pleadings as amended sufficiently articulate viable causes of action against Molinos and that the proof already assembled (without the benefit of formal discovery) sufficiently establishes jurisdiction over it, Plaintiff reserves the right to seek permission to amend the complaint to cure any material deficiencies in the pleadings.