```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
JUSTIN ALBRIGHT, on behalf of his    :
daughter T.A. a minor,               :
                                     :        22cv5987 (DLC)
                   Plaintiff,        :
                                     :       MEMORANDUM OPINION
         -v-                         :          AND ORDER
                                     :
DAILY HARVEST, INC., et al.,         :
                                     :
                   Defendants.       :
                                     :
------------------------------------ X
```

APPEARANCES:

For the plaintiff:
Heisman Nunes & Hull LLP
Paul Vincent Nunes
69 Cascade Drive, Suite 102
Rochester, NY 14614

Marler Clark, LLP PS
William Marler
1012 First Avenue, Suite 500
Seattle, WA 98104

For the defendant Daily Harvest,
Inc.:
Faegre Drinker Biddle & Reath
LLP
Jeffrey S. Jacobson
1177 Avenue of the Americas
41st Floor
New York, NY 10036

Faegre Drinker Biddle & Reath
LLP
Alyssa L. Rebensdorf
Sarah L. Brew
90 S. 7th St., Suite 2200
Minneapolis, MN 55402

For the defendant Second Bite
Foods, Inc. d/b/a Stone Gate
Foods:
Wilson Elser Moskowitz Edelman &
Dicker LLP
Bryan Thomas Vannini
1010 Washington Boulevard
6th Floor
Stamford, CT 06901

Wilson Elser Moskowitz Edelman &
Dicker LLP
Joseph C. Baiocco
1133 Westchester Avenue
White Plains, NY 10604

For the defendant Smirk's Ltd.:
Haworth Barber & Gertsman, LLC
Elizabeth Katumbi Kimundi
Scott Lawrence Haworth
777 Third Avenue, Suite 2104
New York, NY 10017

Haworth Barber & Gertsman, LLC
Jennifer Bruder
505 Main Street, Suite 212
Hackensack, NJ 07601

For the defendant Molinos
Asociados SAC:
Bond, Schoeneck & King PLLC
Michael Patrick Collins
10 Bank Street, 11th Floor
White Plains, NY 10606

Bond, Schoeneck & King PLLC
Thomas Alan Martin
600 Third Avenue, 22nd Floor
New York, NY 10016

DENISE COTE, District Judge:

On June 28, 2023, Molinos Asociados SAC ("Molinos"), a Peruvian corporation and one of four defendants in this products liability action, moved to dismiss the claims brought against it for lack of personal jurisdiction.  For the following reasons, the motion is denied.

## Background

The following facts are taken from the third amended complaint ("TAC") and the documents submitted by the parties in connection with this motion.  The plaintiff, a guardian, alleges that his child sustained serious injuries when she consumed French Lentil + Leek Crumbles ("Product"), a product that contained tara flour produced by defendant Molinos.  Molinos describes itself as a private closed corporation organized and existing under the laws of the country of Peru.

Molinos sold the tara flour to defendant Smirk's Ltd. ("Smirk's") for distribution in the United States.  Smirk's supplied the tara flour to defendant Second Bite Foods, Inc. d/b/a Stone Gate Foods ("Stone Gate") to manufacture the Product.  Stone Gate manufactured the Product for defendant Daily Harvest, Inc. ("Daily Harvest").  Daily Harvest is a Delaware corporation with its principal place of business in New York.

3

Daily Harvest developed the recipe for the Product and sold the Product to plaintiff's family through an online subscription service. The plaintiff asserts that the tara flour contaminated the Product and caused his child's illness.

Molinos exported at least two shipments of its tara flour to Smirk's, which stored it and then shipped it to Stone Gate. Molinos sent the first shipment by boat and the second shipment by air freight.

There are several documents which informed Molinos that the shipments were connected to New York entities and destined for Daily Harvest. Smirk's purchase order for the first shipment states that the tara flour should "match Daily Harvest spec" and instructs Molinos to "work with Janet Chan from Kesco." The purchase order lists Kesco Logistics ("Kesco") with a New York address. The bill of lading for the first shipment instructs that "for delivery please apply to" Sobel Network Shipping Co., Inc. ("Sobel") and includes a New York address for Sobel. The point of discharge is listed as Oakland.

When addressing shipment delays around the time of the second shipment, Molinos sent an email to Smirk's and a representative of a shipping company to coordinate the delivery of the shipment. Molinos copied two Daily Harvest employees on its email. In April 2022, Smirk's advised the Commercial

Manager of Molinos in an email that future orders may be brought
to the port in New York because "Daily Harvest did accept the
kill step validation."

Finally, a Molinos PowerPoint presentation, entitled the
"Nutritional & Immunological Value of Tara Seed Germ Protein,"
refers to both Smirk's and Daily Harvest.  In a section
dedicated to the seed germ lots sold to Smirk's, Molinos reports
that it "accepted Daily Harvest Specifications through
Tracegains webpage," sent samples in 2021, and made three sales
in January, February and April of 2022.  Tracegains appears to
be a website that connects suppliers, vendors, manufacturers,
and other stakeholders in the consumer packaged goods supply
chain.  Screenshots from the Tracegains website reflect that
Daily Harvest has a New York address and is a Smirk's customer.

This action was filed on July 14, 2022.  An amended
complaint was filed on August 18, 2022.  On February 13, 2023,
the plaintiff filed the TAC, adding Molinos as a defendant.
This action is one of 57 similar actions filed in this Court by
individual plaintiffs who allege that they were injured when
they consumed the Product.  It has been designated as the lead
case in this coordinated litigation.

Molinos filed its motion to dismiss for lack of personal
jurisdiction on June 28, 2023.  The plaintiffs and defendant

Smirk's opposed the motion.  The motion became fully submitted
on August 4.

Currently, fact discovery is scheduled to conclude on
January 26, 2024.  A schedule for the remainder of the
litigation, including expert discovery and summary judgment
practice, is to be discussed at the conference scheduled for
that day.

## Discussion

Molinos moves to dismiss the claims brought against it on
the ground that there is no personal jurisdiction over Molinos,
a Peruvian company.  On a motion to dismiss for lack of personal
jurisdiction, "the plaintiff bears the burden of showing that
the court has jurisdiction over the defendant." Metropolitan
Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir.
1996).  Where a court adjudicates a motion pursuant to
Fed.R.Civ.P. 12(b)(2) and "chooses not to conduct a full-blown
evidentiary hearing," the plaintiff need only make a prima facie
showing of personal jurisdiction.  Southern New England
Telephone Co. v. Global NAPS Inc., 624 F.3d 123, 138 (2d Cir.
2010) (citation omitted).  The court may rely on "the
plaintiff's own affidavits and supporting materials, containing
an averment of facts that, if credited, would suffice to
establish jurisdiction over the defendant." Id. (citation

6

omitted).  The court will construe the pleadings and affidavits in favor of plaintiffs, "resolving all doubts in their favor." Id. (citation omitted).

The personal jurisdiction determination in a diversity action involves two steps.  First, a court must look to whether the long-arm statute of the state in which it is located -- here, New York -- authorizes an exercise of personal jurisdiction in the case.  Friedman v. Bloomberg L.P., 884 F.3d 83, 90 (2d Cir. 2017).  "If the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise comports with the requisites of due process."  Id. (citation omitted).

To support the exercise of jurisdiction, the plaintiff relies on two provisions of New York's long-arm statute:  the transaction of business in New York and commission of a tort in New York.  Since there is personal jurisdiction over Molinos due to its transaction of business in New York, it is unnecessary to address the second provision.

Transacting Business

Under § 302(a)(1) of the N.Y.C.P.L.R., a court has personal jurisdiction over a non-domiciliary, who in person or through an agent, "transacts any business within the state or contracts anywhere to supply goods or services in the state."  N.Y.

7

C.P.L.R. § 302(a)(1) (2008).  A defendant may be subject to personal jurisdiction under § 302(a)(1) "if (1) the defendant transacted business within the state; and (2) the claim asserted arises from that business activity." Licci by Licci v. Lebanese Canadian Bank, SAL, 834 F.3d 201, 209 (2d Cir. 2016) (citation omitted).  A defendant "need not be physically present in New York to transact business" in the state within the meaning of the first clause of § 302(a)(1).  Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 169 (2d Cir. 2010).  It is sufficient if the defendant "engages in purposeful activities or volitional acts through which he avails himself of the privilege of conducting activities within the state, thus invoking the benefits and protections of its laws." Id. (citation omitted). Indeed, a single act or proof of a single transaction is sufficient to invoke jurisdiction.  Id. at 170.  Jurisdiction pursuant to § 302(a)(1) may be found even though the defendant has no contractual relationship with a New York company.  Id. at 171.

"Courts look to the totality of the defendant's activities within the forum to determine whether a defendant has transacted business in such a way that it constitutes purposeful activity" in New York.  Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (citation omitted).  A court may consider several

factors when inquiring whether a nonresident defendant transacts business in New York.  As pertinent here, the factors are:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; [and] (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship.

Sunward Electronics, Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004) (citation omitted).

The plaintiff has carried his burden to demonstrate that personal jurisdiction is proper under § 302(a)(1) of New York's long-arm statute.  He has submitted evidence that Molinos purposefully supplied its product to Smirk's with the knowledge that it would be utilized in a product sold to consumers by Daily Harvest.  Molinos was on notice that Daily Harvest used a New York address and that the logistics agent for the transaction, Kesco, was based in New York.

There is no dispute that the claims against Molinos arise from its shipment of tara flour to the United States.  The totality of the evidence presented is sufficient to show that Molinos purposefully engaged in commercial activity with New York entities with the goal of having its flour used in a product to be sold by a New York company.  This is sufficient to establish personal jurisdiction over Molinos under § 301(a)(1).

Molinos does not dispute that it shipped its tara flour to the United States with the understanding that the flour would be used in a product for Daily Harvest, that its product had to meet Daily Harvest's specifications, and that it knew Daily Harvest had a New York address.  It does not deny that it copied Daily Harvest on email correspondence with Smirk's and that New York entities played roles in the importation of its tara flour to the United States.

Molinos argues, however, that the Court should assess the quality of its contacts with New York, not just the quantity. It emphasizes that its contract was with Smirk's, a Colorado company, and that it had no reason to believe that its tara flour would be sold to New York consumers with any more frequency than it would be sold to consumers in other states.

Assessing the totality of the evidence, Molinos transacted business in New York.  Molinos purposefully engaged with Smirk's and Daily Harvest as it sold its tara flour for use in the manufacture of a product it understood would be sold by Daily Harvest, a New York company.  Molinos worked with Smirk's, Kesco, and Sobel in the shipment of its tara flour and ensured that its tara flour met Daily Harvest's specifications.

Due Process Clause

The second component of a personal jurisdiction analysis is a determination of whether the exercise of jurisdiction comports with the Due Process Clause.  The exercise of jurisdiction over Molinos in this action comports with due process.

The due process inquiry has two components: a "minimum contacts" inquiry and a "reasonableness" inquiry.  Chloe, 616 F.3d at 164.  "With respect to minimum contacts, [the court] must determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction," looking at the totality of those contacts.  Id. The reasonableness inquiry requires a court to assess traditional notions of fair play and substantial justice in the circumstances of the particular case.  Id.  A court should consider

> the burden that the exercise of jurisdiction will impose
> on the defendant; (2) the interests of the forum state
> in adjudicating the case; (3) the plaintiff's interest
> in obtaining convenient and effective relief; (4) the
> interstate judicial system's interest in obtaining the
> most efficient resolution of the controversy; and (5)
> the shared interest of the states in furthering
> substantive social policies.

Id.

Molinos had sufficient contacts with New York in connection with its sales of tara flour to make the exercise of jurisdiction reasonable.  As already explained, Molinos knew

11

that its tara flour was to be used in a product sold by Daily
Harvest; it represented that it had complied with Daily
Harvest's specifications for that use; and it knew that Daily
Harvest's business was located in New York.  Although it will be
burdensome for Molinos to travel to New York to litigate this
action, it is reasonable in the circumstances to require it to
do so.  Additionally, New York has a strong interest in this
litigation as a hub of the commercial transactions in which the
parties engaged and as the principal place of business for Daily
Harvest.  The plaintiff's interest in obtaining convenient and
effective relief against all of the defendants in a single
lawsuit strongly supports the exercise of jurisdiction here.

     Finally, the Court of Appeals has observed that it will be
the "rare" case where the requirements of the Due Process Clause
are not met where the exercise of personal jurisdiction is
appropriate under New York's long-arm statute.
Eades v. Kennedy, PC Law Offices, 799 F.3d 161, 168 (2d Cir.
2015).  See also Ingraham v. Carroll, 90 N.Y.2d 592, 596-97
(1997).  This is not that rare case.

     Molinos asserts that it does not have minimum contacts with
New York because it did not intentionally create any contacts
with Daily Harvest and only discovered that its tara flour had
been used in the Product after it was notified of the outbreak

of illness.   The plaintiff has provided sufficient evidence to
carry its burden to show that the exercise of jurisdiction over
Molinos is fair and reasonable.   Again, that evidence includes
Molinos's knowledge that Smirk's was supplying the tara flour to
another company; the multiple shipments of tara flour that
Molinos represented complied with Daily Harvest's
specifications; and Molinos's knowledge that Daily Harvest was a
New York company.

### Conclusion

Molinos's June 28, 2023 motion to dismiss pursuant to Rule
12(b)(2) is denied.


Dated:     New York, New York
           August 25, 2023

                              DENISE COTE
                         United States District Judge

13